UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**KARL TAYLOR**

       Plaintiff,

v.

**CROMETRICS**

       Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Karl Taylor, by and through counsel, HKM Employment Attorneys LLP, for his Complaint against Defendant CROmetrics ("CROmetrics" or "Defendant") states and alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for damages and injuries stemming from Defendant's violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Colorado Minimum Wage Order Number 34, 7 C.C.R. 1103-1:4 ("CMWO"), the Colorado Minimum Wage Order Number 35, 7 C.C.R. 1103:1:4 (together, "CMWO"), and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* ("CWCA"). Plaintiff Karl Taylor was a non-exempt Growth Product Manager. From December 2018 to the time he was terminated on or around December 2, 2019, Plaintiff was regularly required to work in excess of 40 hours per week or 12

1

hours per day, and was denied the overtime compensation he was entitled to under the FLSA, the CMWO and the CWCA.

2.  Defendant retaliated against Plaintiff for reporting same, and terminated his employment, in violation of state and federal law.

3.  Upon his termination on or about December 2, 2019, Defendant refused to pay Plaintiff his past due wages and compensation, in direct violation of the CWCA. Defendant further failed to pay Plaintiff his unpaid wages within the fourteen-day statutory period after Defendant received Plaintiff's timely written demand per C.R.S. § 8-4-110.

4.  Pursuant to FLSA, 29 U.S.C. § 201, *et seq.*, Plaintiff is entitled to (i) unpaid overtime wages from Defendant for his work beyond 40 hours per week; (ii) liquidated damages equal to his overtime compensation; and (iii) attorneys' fees and costs Plaintiff incurs in bringing this action.

5.  Pursuant to Colorado Minimum Wage Order Numbers 34 and 35, 7 C.C.R. 1103-1:4 (together, "CMWO"), Plaintiff is entitled to (i) overtime wages from Defendant for his work beyond 40 hours per week; (ii) overtime wages from Defendant for his work beyond 12 hours per workday; or (iii) overtime wages from Defendant for his work beyond 12 consecutive hours without regard to the starting and ending time of the workday, whichever calculation results in the greater payment of wages); and (iv) attorneys' fees and costs Plaintiff incurs in bringing this action.

6.  Pursuant to the CWCA, C.R.S. § 8-4-101, *et seq.*, Plaintiff is entitled to (i) unpaid wages that were not timely paid upon Plaintiff's termination; (ii) statutory penalties for Defendant's willful failure to pay Plaintiff's unpaid wages; and (iii) attorneys' fees and costs Plaintiff incurs in bringing this action.

## JURISDICTION AND VENUE

7. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

8. Plaintiff brings this action under the FLSA, CMWO, and CWCA.

9. The FLSA authorizes actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337.

10. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

11. This Court also has jurisdiction over Plaintiff's claims for violations of the CWCA and CMWO pursuant to 28 U.S.C. § 1367 because the State claims are so related to the FLSA claims that they arise out of the same case or controversy.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Colorado.

## PARTIES

13. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

14. Plaintiff is and, at all times relevant to the Complaint, was a citizen of the United States and a resident of the State of Colorado.

15. Defendant is a conversion rate optimization agency. Defendant helps companies to grow through strategic, data-driven experimentation. It has run over 18,000 website experiments and personalization campaigns.

16. From approximately December 2018 until his termination on or around December 2, 2019, Plaintiff was an employee of Defendant CROmetrics as defined by the FLSA, 29 U.S.C. § 203; under the CMWO; and as defined by the CWCA at C.R.S. § 8-4-101(4).

17. At all times pertinent to the Complaint, Defendant is and was an employer as defined by the FLSA, 29 U.S.C. § 203(d); under the CMWO; and as defined by the CWCA at C.R.S. § 8-4-101(6).

18. In performing his duties for Defendant, Plaintiff was engaged in commerce or production of goods for commerce within the meaning of the FLSA.

19. In performing his duties for Defendant, Plaintiff used goods and products that had been moved or produced in interstate commerce.

20. Defendant CROmetrics is a California corporation conducting business within the State of Colorado.

21. Upon information and belief, at all times pertinent to this Complaint, Defendant is and was an enterprise engaged in commerce or in the production of goods for consumers within the meaning of the FLSA, 29 U.S.C. §§ 203(r) and (s).

22. Upon information and belief, the gross annual revenue of Defendant is in excess of $500,000.00.

23. Upon information and belief, Defendant has provided services to customers who reside in states other than Colorado.

24. Upon information and belief, Defendant has received payment for its services from private persons or entities outside the State of Colorado.

25. At all times pertinent to this Complaint, Defendant directly or indirectly had the authority to: (a) hire and fire employees; (b) determine the work schedules for its employees; and (c) control the finances and operations of its business. By virtue of having regularly exercised that authority, Defendant is an "employer" defined by the FLSA, the CMWO, and the CWCA.

## FACTUAL ALLEGATIONS

26. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

27. Plaintiff began working as a Growth Product Manager in or around November 2018, with a starting salary of $110,000 per year.

28. Plaintiff's job description as a Growth Product Manager is attached as **Exhibit A**.

29. As a Growth Product Manager, Plaintiff's job responsibilities related to new clients included: preparing presentations for client kick-off meetings; introducing clients to Defendant's best practices; and consulting with the Defendant's analytics team to review the clients' data.

30. As a Growth Product Manager, Plaintiff's job responsibilities related to existing clients included: engaging in weekly check-in calls with clients; preparing for weekly check-in calls with clients, which included reviewing account performance and – with team and supervisory approval – making recommendations for upcoming experiments.

31. As a Growth Product Manager, Plaintiff was required to frequently check in and seek approval and advice from supervisors. For example:

(a) Plaintiff was required to: "Complete regular 1-1" with his manager "coming prepared with an agenda to discuss progress, challenges, support, feedback and development." [Exhibit A, pg. 4].

(b) Plaintiff was required to: "Proactively identify and communication [sp] client 'health' program concerns ([to be identified as] 'Yellow') with Director and Business Development in internal client channels to prevent client churn."

(c) Plaintiff was regularly required to request approval from supervisors, such as the Director/Sales Lead.  For example, on or around February 20, 2019, Ann Devens requested a meeting with Plaintiff, Grant Tilus (Director of Product Management), and Nik Budisavljevic (Senior Growth Product Manager) to: "Check in on status of engagement and gather team input prior to Grand [sp] and Ann's check in call with Alec."

(d) Plaintiff was required to have weekly check-in calls with his supervisors, Jerome Choo, Grant Tillus, Joanna Israel, and Drew Seman (all Directors of Product Management).

(e) Plaintiff had almost no discretion in experiment ideas, i.e. he was not permitted to create experiments for clients, to poll viewers and determine strategy for optimization, without team and supervisory input and approval.  If he saw a specific opportunity for an experiment, Plaintiff would have to convince both his immediate manager and the client in order to build that experiment into the client's roadmap.

(f) Plaintiff was required to seek out approval from a Director of Product Management for day to day decisions, including but not limited to whether he was permitted to escalate turnaround time on a project or respond to a client's rush request; what the priorities should be for each client's project; and whether Plaintiff could use resources outside of his department.

32. Plaintiff regularly performed non-exempt work. Plaintiff did not perform work that was supervisory in nature, routine clerical duties, and/or work requiring advanced knowledge.

33. Plaintiff did not have the discretion to set his own schedule.

Mr. Taylor is Not Exempt from Overtime Under the Professional Exemption.

34. Plaintiff did not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

35. While working for Defendant, Plaintiff was not in a profession where specialized academic training is a standard prerequisite for entrance into the profession.

36. Plaintiff's position with Defendant was primarily one of relationship-management, not one which required advanced knowledge.

37. As a Growth Project Manager, Plaintiff worked in a field that was not customarily acquired by a prolonged course of specialized intellectual instruction.

Mr. Taylor is Not Exempt from Overtime Under the Administrative Exemption.

38. Plaintiff did not have the discretion to tailor communications to a client's individual needs.

39. Plaintiff's job duties did not relate to management policies or policies regarding business operations.

40. Plaintiff's primary duty work did not require consistent exercise of discretion and judgment.

41. Plaintiff was not permitted to formulate, affect, interpret, or implement management policies or operating practices.

42. Plaintiff was not permitted to deviate from established policies and procedures without prior approval.

43. Plaintiff's primary duty work did not require office or non-manual work directly related to management or general business operations of employer or employer's customers.

44. Plaintiff's discretion was not exercised with regard to significant matters, he was supervised, and required to frequently report to supervisors.

45. Plaintiff did not have independence and discretion related to matters of significance, i.e. important decisions involving important consequences.

46. Plaintiff did not possess final authority as to any matter of marginal import.

47. Plaintiff did not exercise discretion or independent judgment as to matters of significance.

48. Project Managers – along with Delivery Team members – are at the bottom of Defendant's organizational chart.

<u>Mr. Taylor is Not Exempt from Overtime Under the Executive Exemption.</u>

49. Plaintiff did not regularly supervise two or more employees while employed with Defendant.

50. Plaintiff did not have management as a primary duty of his position with Defendant.

51. Plaintiff did not have any genuine input into the job status of other employees – such as hiring, firing, promotions, or assignments – while working for Defendant.

52. Plaintiff did not determine staffing levels.

53. Plaintiff did not supervise or have the authority to discipline other employees working for Defendant.

8

54. Plaintiff did not have the authority to hire and/or fire employees at any time during his employment.

55. Plaintiff did not have the authority to assign work to employees. Instead, he would have to request work from the engineering team when needed.

**Plaintiff's Schedule and Hours.**

56. Throughout his employment with Defendant, Plaintiff was a full-time employee.

57. As soon as he began working for Defendant, Plaintiff was forced to work in excess of 40 hours per week and 12 hours per day without receiving any overtime compensation.

58. Plaintiff was required to enter his hours worked into Harvest, the Defendant's time-tracking system.

59. Plaintiff dutifully entered his hours into Harvest.

60. Plaintiff frequently worked between 50 and 56 hours each week. The following, for example, are some of Plaintiff's monthly time entries:

(a) December 2018: worked 183.3 hours;

(b) January 2019: worked 202.5 hours;

(c) February 2019: worked 173.8 hours;

(d) March 2019: worked 224.8 hours;

(e) April 2019: worked 215.1 hours;

(f) May 2019: worked 216.9 hours;

(g) June 2019: worked 195.1 hours; and

(h) July 2019: worked 223.6 hours.

61. Plaintiff's unpaid overtime from December 2018 through July 2019 is approximately $31,959.00.

62. Plaintiff's work hours for Defendant exceeded 40 hours per week every week or almost every week from December 1, 2018 until his termination on December 2, 2019.

63. Upon information and belief – and based upon Plaintiff's average hours worked from December 2018 through July 2019 – Mr. Taylor anticipates that he is owed $3,994.88 per month in overtime from August 2019 to December 2, 2019.

**Defendant's Willful Violation of the FLSA, CMWO, and CWCA.**

64. Defendant willfully violated the FLSA, CMWO, and CWCA overtime requirements.

65. Defendant's failure to pay overtime wages was not a violation made in reasonable good faith, nor based on any diligent investigation into the proper application of federal or state wage laws.

66. At all times relevant to this Complaint, the Defendant was or should have been aware of the requirements of the FLSA and Colorado Wage and Hour Law, but nevertheless failed to pay Plaintiff overtime compensation for all of the hours that he worked.

67. At the time his employment was terminated – upon information and belief – Plaintiff was owed at least $51,933.38 in unpaid overtime wages.

68. On December 2, 2019, Plaintiff sent a demand for payment of unpaid wages in compliance with C.R.S. § 8-4-109(3)(a) to Defendant. The Defendant is therefore on actual notice that Plaintiff is due unpaid wages resulting from the Defendant's illegal pay policies and practices.

69. On or about March 24, 2020, via a letter from counsel, Plaintiff informed Defendant that a more accurate calculation of his unpaid wages was $51,933.38, based on both the known unpaid amounts and the amounts he anticipated to see from July – December 2019 logged in Harvest.

70. To date, Defendant has not paid Plaintiff's overtime compensation.

71. At the date of filing this Complaint, Defendant remains an active corporation conducting business in the State of Colorado.

72. Defendant has willfully refused, and continues to refuse, to pay Plaintiff's overtime compensation.

73. As a result of Defendant's failure to pay Plaintiff the overtime compensation due to him, Plaintiff has incurred significant costs, loses, and damages.

**FIRST CLAIM FOR RELIEF**
**Violation of the Fair Labor Standards Act**

74. Plaintiff incorporates by reference all paragraphs in this Complaint as if fully set forth herein.

75. Plaintiff is a non-exempt employee who provided growth management services for Defendant's clients. Under the FLSA, Plaintiff worked overtime and was entitled to overtime compensation from Defendant of one and one-half times his regular rate of pay for hours he worked beyond 40 hours per week. 29 U.S.C. §§ 207(a)(1) and 207(e).

76. By Defendant's acts and omissions outlined herein, Defendant violated the FLSA.

77. At all times pertinent to this Complaint, Defendant was subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

78. Plaintiff was, and is, entitled to unpaid overtime.

79. A portion of Plaintiff's worked hours are contained herein, demonstrating the hours that Plaintiff worked for Defendant.

80. Upon information and belief, Plaintiff's complete hours are contained in Harvest.

81. Defendant did not act in good faith, nor with reasonable grounds to believe its acts and omissions were not a violation of the FLSA and, as a result, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime described above, pursuant to the FLSA, 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime wages, Plaintiff is entitled to an award of pre- and post-judgment interest at the applicable legal rate.

82. As a result of Defendant's willful violations of the FLSA, overtime compensation has been unlawfully withheld by Defendant from Plaintiff, for which Defendant is liable with an additional equal amount as liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, and costs of this action.

## SECOND CLAIM FOR RELIEF
**Violation of the Colorado Minimum Wage Order**

83. Plaintiff incorporates by reference all paragraphs in this Complaint as if fully set forth herein.

84. Under Colorado's overtime laws, an employer must pay its employees under the method that would give the greatest benefit to employees, and employers are required to pay each non-exempt employee an overtime wage for all hours worked in excess of:

- 40 hours in one workweek;
- 12 hours in one workday; or

- 12 consecutive hours, regardless of whether the work period overlaps into a second day.

CMWO, 7 C.C.R. 1103-1:4.

85. As detailed in the factual allegations herein, Plaintiff frequently worked in excess of 40 hours during one workweek, 12 hours in one workday, and 12 consecutive hours, without receiving overtime compensation.

86. Defendant is required to pay Plaintiff overtime premium compensation of one and one-half times his regular rate of pay for each hour he worked beyond the 40 hours per week. 7 C.C.R. 1103-1:4.

87. Defendant violated Colorado law, including the CMWO, by committing acts and omissions outlined in this Complaint.

88. Due to Defendant's CMWO violations, Plaintiff is entitled to recover from Defendant his unpaid overtime compensation and reasonable attorneys' fees and costs of this action, pursuant to 7 C.C.R. 1103-1:18.

### THIRD CLAIM FOR RELIEF
**Violation of the Colorado Wage Claim Act**

89. Plaintiff incorporates by reference all paragraphs in this Complaint as if fully set forth herein.

90. Under the CWCA, §§ 8-4-101, *et seq.*, Plaintiff was entitled to receive all wages for all hours he worked.

91. On or about December 2, 2019, Plaintiff sent written demand for payment of his unpaid overtime wages to Defendant. (*See* **Exhibit B**, Demand for Payment of Wages).

92. On or about March 24, 2020, via a letter from counsel, Plaintiff informed Defendant that a more accurate calculation of his unpaid wages was $51,933.38, based on both the known

13

unpaid amounts and the amounts he anticipated to see from July – December 2019 logged in Harvest.

93. Defendant refused to pay Plaintiff the owed amounts.

94. As of the date of this Complaint, Defendant has neither sent nor provided Plaintiff his due and owing overtime wages within 14 days of the written notice, as required by the CWCA, or provided any reason for withholding Plaintiff's overtime wages.

95. These wages were earned, vested, and determinable during Plaintiff's employment.

96. Defendant's failure to pay Plaintiff his wages was willful.

97. Defendant has not reasonably and in good faith taken measures to properly investigate and ensure its overtime policy complies with state and federal law.

98. Through due diligence, Defendant should have known that its overtime policy violates state and federal wage and hour law.

99. Defendant's violation of the CWCA was and is willful because it knew or showed reckless disregard for whether its overtime policy complied with the law.

100. Plaintiff is entitled to all unpaid wages, statutory penalties, and attorneys' fees and costs, in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
Civil Theft

101. Plaintiff incorporates by reference all paragraphs in this Complaint as if fully set forth herein.

102. Plaintiff seeks recovery against Defendant for civil theft.

103. Plaintiff's employment services were valuable to Defendant.

104. Defendant refused to properly pay Plaintiff for his employment services. Such refusal constituted theft.

105. Defendant did so with the intent to permanently deprive Plaintiff of the use or benefit of the wages Plaintiff should have received for his services rendered to Defendant.

106. Plaintiff has suffered damages, including economic loss, as a result of Defendant's theft.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Award Plaintiff his unpaid overtime compensation due under the CMWO, FLSA, and CWCA;

B. Award Plaintiff liquidated damages equal to his unpaid overtime compensation due under the FLSA;

C. Award Plaintiff penalties under the CWCA;

D. Award Plaintiff pre-judgment and post-judgment interest at the highest lawful rate;

E. Award Plaintiff reasonable attorneys' fees, as well as the costs of this action; and

F. Award such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 4th day of March 2021.

                              **HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Jesse K. Fishman*
     Jesse K. Fishman
     Claire E. Hunter
     HKM Employment Attorneys LLP
     730 17th Street, Suite 750
     Denver, Colorado 80202
     Telephone: (720) 668-8989
     jfishman@hkm.com
     chunter@hkm.com
     *Attorneys for Plaintiff Karl Taylor*